UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:17-CV-93-TBR

JUDY BERNARD,                                                                                          PLAINTIFF

v.

ADS SECURITY, L.P. et al.,                                                                        DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon two motions. First, Defendant ADS Security, L.P. ("ADS") has moved for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). [DN 7.] Second, Defendant ADT LLC ("ADT") has also filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c). [DN 6.] These matters are ripe for adjudication. For the following reasons, both of these Motions [DN 7, DN 6] are **DENIED.**

**I. Factual & Procedural Background**

Plaintiff Judy Bernard ("Plaintiff") initially filed this lawsuit against ADS, ADT, and First Response, Inc.[1] in McCracken County, Kentucky Circuit Court on December 15, 2016. [DN 1-1, at 5.] Plaintiff contracted with ADT in 2005 to install and monitor a carbon monoxide detector in her home. [DN 6-1, at 1.] Plaintiff does not specify exactly how or when she ended her contract with ADT and subsequently contracted with ADS, but ADT's instant Motion notes the following: "ADT monitored [Plaintiff's] alarm system until she cancelled her ADT service and contracted with co-defendant ADS…." [*Id.*] Likewise, ADS's instant Motion notes that ADS and Plaintiff entered into a similar monitoring agreement on March 1, 2008. [DN 7-1, at 2.]

---

[1] First Response, Inc. is no longer a party to this action.

1

Much later, in January 2016, "[P]laintiff began experiencing dizziness, nausea, headaches and diarrhea. This coincided with the plaintiff using her gas fireplace. The more she used her fireplace, her sickness worsened." [DN 1-1, at 6.] Plaintiff's symptoms continued to get worse until February 15, 2016, when she "called a local heating and air company to check her home for carbon monoxide. The inspection revealed that her fireplace burners needed cleaning, that her fireplace vent was closed and that the plaintiff had been living with excessive carbon monoxide." [*Id.*] Plaintiff alleges that, "[d]espite the high levels of carbon monoxide in the home, the carbon monoxide detectors inspected by and maintained by ADS had not indicated there was a problem." [*Id.*] After the revelation regarding the high carbon monoxide levels in her home, "ADS came…to inspect what had happened. The plaintiff was told by an unknown employee of ADS that her carbon monoxide detector had not been working properly since on or about November, 2014." [*Id.*] Plaintiff alleges that the "ADS employee also stated that the carbon monoxide detector had been improperly installed by ADT, LLC, a rival security company…." [*Id.*] Plaintiff alleges negligence against both ADT and ADS arising from these events. In response, both ADS and ADT have filed Motions for Judgment on the Pleadings.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The Court analyzes a Rule 12(c) motion for judgment on the pleadings using the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). This means that, in order to survive a Rule 12(c) motion for judgment on the pleadings, the plaintiff's complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp.*

*v. Tombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And even though "[t]he plausibility standard is not akin to a 'probability requirement,'" it necessitates "more than a sheer possibility that a defendant has acted unlawfully." *Id.* In other words, the allegations made by the plaintiff in her complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When a Court is presented with a Rule [12(c)] motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion…so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001)). Finally, in considering a Rule 12(c) motion, the Court "construe[s] the complaint in the light most favorable to the nonmoving party, accept[s] the well-pled factual allegations as true, and determine[s] whether the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). However, this does not mean that the Court must "accept the plaintiff's legal conclusions or unwarranted factual inferences as true." *Id.*

### III. Utilization of the Underlying Contracts

As an initial matter, this Court must determine whether it can utilize the contracts between ADT and Plaintiff, and ADS and Plaintiff, in reaching its disposition here. The contracts were not attached to Plaintiff's Complaint. As noted above, the Court can consider documents attached to a defendant's motion to dismiss where such documents "are referred to in the

Complaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430. In her Complaint, Plaintiff explains in Count II against ADT that, "[a]s described above, the plaintiff was a former customer of ADT when her carbon monoxide detector was installed." [DN 1-1, at 7.] The "above" description to which Plaintiff was presumably referring is located in Count I against ADS, and is as follows: "The plaintiff had been a customer of ADS for a few years. Part of the *services she purchased from ADS* was carbon monoxide detection, inspection and maintenance." [*Id.* at 6 (emphasis added).] Plaintiff goes on to allege that ADT was later purchased by ADS. [*Id.*]

The Court finds that her reference to being a paying customer of both ADT and ADS presupposes the existence of an agreement between the parties wherein Plaintiff paid for services provided by both companies. The manifestations of those agreements are the contracts between Plaintiff and ADT and Plaintiff and ADS, attached to both of the Rule 12(c) Motions here. Further, these two contracts and their terms are obviously "central to the claims" contained in Plaintiff's Complaint. *See Basset*, 528 F.3d at 430. Finally, Plaintiff does not contend in her Response, and the Court can find no reason why, that the usage of one or both of these contracts would be inappropriate. Thus, the Court has determined that the contracts may be considered without turning these Motions into ones for summary judgment pursuant to Rule 12(d).

### IV. ADS's Motion for Judgment on the Pleadings

In support of its Motion for Judgment on the Pleadings, ADS argues that a clause contained in the contract between ADS and Plaintiff "decimates the viability of Plaintiff's negligence claim against ADS," and that the Court should dismiss Plaintiff's claim accordingly. [DN 7-1, at 1.] ADS further argues that, in the alternative, should this Court allow Plaintiff's negligence claim against ADS to proceed, an order should be entered limiting any potential

recovery by Plaintiff to $500.00, the amount identified in the underlying contract. [*Id.* at 1-2.] "In order to state a cause of action based on negligence, a plaintiff must establish a duty on [the part of] the defendant, a breach of the duty, and a causal connection between the breach of the duty and an injury suffered by the plaintiff." *Lewis v. B & R Corp.*, 56 S.W.3d 432, 437 (Ky. Ct. App. 2001). "The existence of a duty is a question of law for the court, while breach and injury are questions of fact for the jury." *Boland-Maloney Lumber Co., Inc. v. Burnett*, 302 S.W.3d 680, 686 (Ky. Ct. App. 2009) (citing *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003)).

In her Complaint, Plaintiff alleges that the sickness she suffered and the negative effects stemming therefrom were a result of a negligently installed carbon monoxide detector that failed to alert her or ADS or ADT that her home contained dangerously high levels of the gas. [DN 1-1, at 6.] She further alleges that "ADS was negligent in allowing the plaintiff's carbon monoxide detector to be in non[-]working condition for such a long period of time." [*Id.*] In support of this contention, she notes that "ADS came to the plaintiff's home to inspect what had happened" to the carbon monoxide detector, and that "[t]he plaintiff was told by an unknown employee of ADS that her carbon monoxide detector had not been working properly since on or about November, 2014." [*Id.*] Plaintiff also alleges that, as a result of this negligence, she has suffered both mental and physical pain and suffering. [*Id.* at 6-7.] On its face, Plaintiff's Complaint appears to state a claim upon which relief can be granted.

In ADS's instant Motion, however, its principle argument is that, irrespective of the allegations contained in the Complaint, Plaintiff signed a contract in which she agreed to forego the opportunity to sue ADS in tort for incidents arising out of that contractual relationship. This contract states in pertinent part as follows:

> **Disclaimer/Limitation of Company Liability.** Customer understands and agrees as follows; (I) neither company nor it's [sic] directors, officers,

shareholders, partners or employees (collectively, "company") is an insurer…
(IV) company is released from all loss, damage or expense which may occur prior
to, contemporaneously with, or subsequent to the execution of this agreement due
to the improper operation or non-operation of the system (including…the
communications equipment or services necessary to transmit to or receive any
data at the monitoring facility); and (V) should there arise any liability on the part
of company for economic losses, personal injury, including death, or property
damage (real or personal) which is in connection with, arises out of or from,
results from, is related to or is a consequence of the active or passive sole, joint or
several negligence of any kind or degree or company…such liability shall be
limited to the maximum sum of five hundred dollars ($500.00) collectively for
company, and this liability shall be exclusive. In the event customer wishes to
increase the maximum amount of such limited liability, customer may, as a matter
of right, obtain a higher limit by paying an additional amount for the increase in
such liability, but this payment shall in no way be interpreted to hold company as
an insurer.

[DN 13-1, at 1.] This section of the contract, to which Plaintiff apparently agreed in writing on March 1, 2008, appears to be an attempt to preclude, or at least severely limit, any recovery insofar as it relates to Plaintiff's claim for negligence against ADS.

In *United Servs. Auto. Ass'n v. ADT Security Servs., Inc.*, 241 S.W.3d 335 (Ky. Ct. App. 2006), the Kentucky Court of Appeals upheld a grant of summary judgment in favor of the defendant in a case bearing many similarities to this one. However, this Court deals with a Rule 12(c) motion and not one under Rule 56. In *United Services*, the plaintiffs entered into an alarm services contract with ADT and a separate agreement with USAA for homeowner's insurance. *Id.* at 337. Sometime later, the house caught fire and the plaintiffs suffered substantial losses. *Id.* at 338. USAA subsequently paid around $885,000 to the plaintiffs pursuant to their insurance agreement, and then brought a subrogation action, along with the plaintiffs, against ADT. *Id.* They made claims of "breach of warranty, strict liability, and negligence….[T]he circuit court entered an order granting summary judgment" in favor of ADT. *Id.* On appeal, as in this case, two of the principle arguments advanced by the appellants were (1) the contract between ADT and the homeowners was one of adhesion, and (2) the contract was unconscionable. *Id.* at 338-

39. The Kentucky Court of Appeals explained there that, "[u]nder Kentucky law a party to a contract may agree to release another from liability for ordinary or gross negligence, but not for willful or wanton negligence or where contrary to public policy." *Id.* at 341 (citations omitted). Importantly, "[c]ontracts exempting from liability for negligence are not favored and are strictly construed against the parties relying on them." *Id.* at 342 (citing *Cobb v. Gulf Refining Co.*, 145 S.W.2d 96, 99 (Ky. 1940) and *Hargis v. Baize*, 168 S.W.3d 36, 47 (Ky. 2005)). Indeed, "[t]he wording of the release must be 'so clear and understandable that an ordinarily prudent and knowledgeable party to it will know what he or she is contracting away; it must be unmistakable.'" *Id.* (quoting *Hargis*, 168 S.W.3d at 47 (citing 57A Am. Jur.2d, *Negligence* § 52)).

> According to the Kentucky Supreme Court,
>
> A preinjury release will be upheld only if (1) it explicitly expresses an intention to exonerate by using the word 'negligence;' or (2) it clearly and specifically indicates an intent to release a party from liability for a personal injury caused by that party's own conduct; or (3) protection against negligence is the only reasonable construction of the contract language; or (4) the hazard experienced was clearly within the contemplation of the provision. Thus, an exculpatory clause must clearly set out the negligence for which liability is to be avoided.

*Hargis*, 168 S.W.3d at 47 (internal quotation marks and citations omitted).

Importantly though, the issues of unconscionability, whether the contract was an adhesion contract, and the enforceability of the preinjury release clause contained in the contract, were hashed out at the summary judgment phase of *United Services* and on appeal. And ADS cites to no cases wherein such language was used as the basis for dispensing with a case at such an early stage as the Rule 12(b)(6) or Rule 12(c) one. Indeed, the Kentucky Court of Appeals' decision in *United Services* is the only case to which ADS cites in the Argument section of the instant Motion. [*See* DN 7-1, at 4-7.] The Court is want to dispense with an entire case at this

7

juncture in the litigation based upon issues, which, to the Court, appear to still be somewhat cloudy and uncertain. For example, factual issues remain unresolved with respect to how clear, precise, and understandable the language of the preinjury release clause in the underlying contract was, and whether protection against negligence is the only reasonable construction of the contract. *See Hargis*, 168 S.W.3d at 47. Additionally, there remain unresolved factual issues pertaining to the conscionability, or lack thereof, of the contract itself, including the relative bargaining power of the parties, and whether the contract could or could not fairly be described as an adhesion contract. The *United Services* case certainly appears to favor ADS's position, but the decision there was reached at a different stage in the litigation and upon a different legal standard: the Rule 56 summary judgment phase. These unanswered factual disputes also preclude an order from this Court limiting any potential recovery by Plaintiff to $500.00. The Court will deny ADS's 12(c) Motion for Judgment on the Pleadings because there remain too many factual disputes for this Court to say that Plaintiff's Complaint does not state a claim that is plausible on its face. *See Tombly*, 550 U.S. at 570.

### V. ADT's Motion to Dismiss

ADT's Rule 12(c) Motion for Judgment on the Pleadings tracks ADS's very closely, and sets forth the principle argument that the contract entered into between Plaintiff and ADT precludes any recovery in tort. [*See* DN 6-1.] Specifically, ADT argues that (1) there is no common law duty to properly install a carbon monoxide monitoring device and so Plaintiff's claim must fail; (2) Plaintiff's claim must alternatively fail because she agreed to waive any such claim in the contract between the parties; and (3) if Plaintiff *can* recover damages, they must be limited to the agreed-upon amount in the contract of $250.00. [*See id.* at 4-6.] ADT's Motion will be denied.

First, with respect to arguments (2) and (3) presented by ADT, the same reasoning applies as did with ADS's Motion in Section IV of this Memorandum Opinion and Order. ADT has attached to the instant Motion the contract between ADT and Plaintiff wherein ADT agrees to provide services to Plaintiff. Also included in that contract is language fairly similar to the above-quoted section from the contract between Plaintiff and ADS. Of particular importance to ADT's position is the following language:

> The subscriber does not desire this contract to provide for full liability of dealer and agrees that dealer shall be exempt from liability for loss, damage, or injury due directly or indirectly to occurrences, or consequences therefrom, which the service or equipment is designed to detect or avert.

[DN 6-1, at 6.] Additionally, the contract contains language indicating that ADT's liability is limited with respect to any negligence on their part regarding its contract performance obligations. [*Id.*]

However, notwithstanding this language, the Court is satisfied that Plaintiff's Complaint does state a claim that is plausible on its face. *See Tombly*, 550 U.S. at 570. Plaintiff raises interesting and important issues in her Response to the instant Motion, namely, the issue of unconscionability and whether the contract between ADT and herself was an adhesion contract. She presents allegations that, taken as true and aggregated together, give this Court pause and makes it hesitant to throw the case out at this time. This is not to say that the contract is not relevant, or might not become an important or dispositive document later in this case. And it certainly appears at least facially that ADT, as ADS, drafted this document in an effort to avoid liability. But Rule 12(b)(6) and Rule 12(c) motions are meant to dispense with needless litigation and dispose of complaints that do not give rise to any chance of recovery by the Plaintiff. The fact that she was suffering from carbon monoxide poisoning in her home and the alarm services companies she had contracted with to alert her of such an unfortunate circumstance did not

9

function properly or otherwise aid her in any way whatsoever, in this Court's view, "raise[s] a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This renders judgment in favor of ADT an impossibility at this stage in the case, and on this legal standard of review. Indeed, as noted above, "[c]ontracts exempting from liability for negligence are not favored and are strictly construed against the parties relying on them." *United Servs.*, 241 S.W.3d at 342 (citations omitted). This standard, coupled with the *Hargis* factors laid out above, lead the Court to the determination that a decision to dispense with Plaintiff's case at this juncture would be improper, and therefore declines the invitation to do so.

ADT cites to *Ronald A. Chisholm Ltd. v. Am. Cold Storage, Inc.*, No. 3:09-cv-00808, 2013 WL 4042036, at *2 (W.D. Ky. Aug. 8, 2013) in support of the proposition that, "[u]nder Kentucky law, the failure to perform a contractual obligation typically does not give rise to a cause of action in tort." In other words, ADT has asserted that it owed no legal duty to Plaintiff other than the one it undertook by being a party to the contract between itself and Plaintiff. Thus, according to ADT, its only duty was "to properly install and monitor an alarm system," which "is a contractual duty." [DN 6-1, at 5.] Again, however, *Chisholm* dealt with a summary judgment motion, as did *Presnell v. Const. Managers Inc. v. E.H. Constr., LLC*, 134 S.W.3d 575 (Ky. 2004), another case upon which ADT relies in support of its argument that it owed no independent legal duty to Plaintiff apart from the contractual one. This may very well be the case. Irrespective of that, though, Plaintiff has met the Rule 12(c) standard in stating a claim that is plausible on its face and, taking all of the allegations in the Complaint as true, the inference can be made that ADT and/or ADS is liable for negligence. *See Iqbal*, 556 U.S. at 662 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."). For this reason, ADT's Motion will be denied at this time.

## VI. Conclusion

For the reasons stated herein, **IT IS HEREBY ORDERED AS FOLLOWS:** ADS's Motion for Judgment on the Pleadings [DN 7] is **DENIED.**

**IT IS FURTHER ORDERED THAT** ADT's Motion for Judgment on the Pleadings [DN 6] is **DENIED.** A telephonic scheduling/status conf. is set on 1/11/18 at 9:45 a.m. Central. The Court shall place the call to counsel.

**IT IS SO ORDERED.**

cc: Counsel of Record